**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>WILLIAM G. STEPHENS; NORMA STEPHENS, husband and wife,<br><i>Plaintiffs-Appellants</i>,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><i>Defendant-Appellee.</i></td>
<td>No. 18-35908<br><br>D.C. No.<br>1:17-cv-00385-<br>BLW<br><br><br>OPINION</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted July 9, 2019
Seattle, Washington

Filed August 28, 2019

Before: Paul J. Watford and Eric D. Miller, Circuit Judges,
and Barbara Jacobs Rothstein,[*] District Judge.

Opinion by Judge Miller

---

[*] The Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

## SUMMARY**

### Idaho Law / Negligence

The panel affirmed the district court's summary judgment in favor of Union Pacific Railroad in a plaintiff's action alleging that secondary exposure to asbestos exposure caused his mesothelioma, and asserting negligence and related claims under Idaho law.

Plaintiff alleged that his father worked at a Union Pacific roadhouse where he was exposed to asbestos, and that his father carried the asbestos home and exposed plaintiff to asbestos.

Under Idaho law, the panel held that plaintiff failed to create a genuine issue of fact on whether any asbestos exposure that may have occurred was a substantial factor in causing his mesothelioma. The panel held that in the context of asbestos claims, the substantial-factor test requires "demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1176 (9th Cir. 2016).

In an effort to establish causation, plaintiff relied on the testimony of two experts. The panel agreed with the district court that those opinions were insufficient. The panel held that the experts had no basis to conclude that plaintiff was exposed to asbestos with any regularity. The panel rejected

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiff's assertion that Union Pacific had waived any objection to the admissibility of one of the expert's testimony. The panel concluded that because plaintiff failed to establish that he was regularly exposed to asbestos attributable to Union Pacific, plaintiff could not create a genuine issue of material fact whether his secondary exposure was a substantial factor in causing his disease, and he could not prevail on his negligence claim.

## COUNSEL

Matthew P. Bergman (argued) and Ruby K. Aliment, Bergman Draper Oslund, Seattle, Washington, for Plaintiffs-Appellants.

Steven M. Crane (argued), Viiu Spangler Khare, Barbara S. Hodous, and Ryan T. Moore, Berkes Crane Robinson & Seal LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

MILLER, Circuit Judge:

William Stephens spent nearly 20 years working with asbestos-containing products while employed at lumber mills in Oregon. After being diagnosed with mesothelioma, he brought an action in Oregon state court against his former employers and other defendants that manufactured or used asbestos-containing products, including the Union Pacific Railroad Company. Stephens's claims against Union Pacific were dismissed for lack of personal jurisdiction, and he ultimately settled the litigation in exchange for a substantial payment from the other defendants.

Stephens then brought the present action against Union Pacific in the District of Idaho. In the late 1940s and early 1950s, when Stephens was a child, his father worked at a Union Pacific roundhouse in Weiser, Idaho. Stephens alleges that his father was exposed to asbestos at work and then carried asbestos home on his clothes, exposing the rest of his family. According to Stephens, that secondary asbestos exposure caused his mesothelioma. Invoking the district court's diversity jurisdiction under 28 U.S.C. § 1332, Stephens asserted negligence and related claims under Idaho law.

The district court granted summary judgment in favor of Union Pacific, concluding that Stephens failed to introduce sufficient evidence to raise a genuine issue of fact on (1) whether Stephens was exposed to asbestos attributable to Union Pacific and (2) whether that exposure was a substantial factor in causing his disease. We have jurisdiction over Stephens's appeal under 28 U.S.C. § 1291, and we review the district court's grant of summary judgment de novo. *See Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). We affirm.

To survive a motion for summary judgment, a nonmoving party must present "evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see* Fed. R. Civ. P. 56(a). We must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under those standards, we think it is a close question whether Stephens presented sufficient evidence of exposure. To establish liability for negligence under Idaho law, a plaintiff must demonstrate "a causal connection between the

defendant's conduct and the resulting injury." *Johnson v. Wal-Mart Stores, Inc.*, 423 P.3d 1005, 1008 (Idaho 2018). Asbestos cannot cause injury in someone who is not exposed to it, so in the context of asbestos-related negligence, exposure is a necessary element of the claim. *See*, *e.g.*, *Menne v. Celotex Corp.*, 861 F.2d 1453, 1461–62 (10th Cir. 1988); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482–83 (11th Cir. 1985).

As the district court recognized, "Stephens himself provides the only potential evidence of exposure." Stephens testified that when he was between six and eight years old, he visited his father at work up to four times, where he witnessed Union Pacific employees removing and replacing insulation on steam engines. Stephens testified that the workplace was dusty and that his father's work clothes were dusty when he came home. During a deposition, Stephens was shown photographs of steam engines with exposed insulation and he said that they looked familiar—but the photographs were not taken at the Union Pacific roundhouse in Weiser.

For its part, Union Pacific admitted that during the relevant time period, it likely used asbestos-containing products. It also admitted that asbestos dust likely would have been released if there was a "major overhaul" of a steam engine, such as when its lagging was removed or disturbed. And it admitted that if Stephens's testimony is correct—that is, if he saw steam engines at the roundhouse—then those locomotives would have been insulated with asbestos-containing products. But Union Pacific's corporate representative also testified that, apart from Stephens's account, there was no record of steam engines ever being repaired or even located at the Union Pacific roundhouse in Weiser.

The parties dispute whether that evidence is sufficient, but we need not resolve the question because we agree with the district court that Stephens failed to create a genuine issue of fact on whether any exposure that may have occurred was a substantial factor in causing his disease. When an injury has more than one possible cause, Idaho requires a plaintiff to show that the defendant's conduct was a "substantial factor" in causing the injury. *Garcia v. Windley*, 164 P.3d 819, 823 (Idaho 2007). The substantial-factor test is more permissive than the "but-for" test applied in cases involving only a single possible cause. The but-for test asks whether an injury would have occurred "in a hypothetical world absent the defendant's alleged negligence." *Newberry v. Martens*, 127 P.3d 187, 190 (Idaho 2005). The substantial-factor test, by contrast, can be satisfied even if the defendant's negligence is one of several factors that contributed to the injury, and even if the injury would have happened without it. In other words, the defendant's negligence "need not be the sole factor, or even the primary factor, in causing the plaintiff's injuries, but merely a *substantial* factor." *Fouche v. Chrysler Motors Corp.*, 692 P.2d 345, 348 (Idaho 1984).

While the substantial-factor test is a "liberal standard," *Doe v. Sisters of Holy Cross*, 895 P.2d 1229, 1233 (Idaho 1995), it is not without limit. *See*, *e.g.*, *Munson v. Idaho Dep't of Highways*, 531 P.2d 1174, 1176–77 (Idaho 1975) (affirming summary judgment because plaintiff failed to create a genuine issue of fact on causation under substantial-factor test). In the context of asbestos claims, we have held that the substantial-factor test requires "demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1176 (9th Cir. 2016). "Evidence of only minimal exposure to asbestos is

insufficient"; instead, the plaintiff must demonstrate "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (internal quotation marks omitted).

Our decision in *McIndoe* involved federal maritime law, but we believe that Idaho courts would apply the same principles of tort causation that we applied in that case. Our approach in *McIndoe* did not reflect a uniquely maritime rule but instead was based on settled common-law principles described in the Restatement. *Id.* at 1176 n.6, 1177. Specifically, we relied on the Restatement (Third) of Torts in concluding that liability cannot be based on "fleeting or insignificant encounters" with asbestos. *Id.* at 1177. Our reasoning in *McIndoe* paralleled that of Idaho decisions that have relied on similar limiting principles articulated in the Restatement (Second) of Torts. *See, e.g.*, *Beers v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, 316 P.3d 92, 98 (Idaho 2013) (relying on the Second Restatement to limit duty to protect third persons); *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 546 P.2d 54, 57–58 (Idaho 1975) (relying on the Second Restatement to limit liability resulting from a superseding cause). At least on this point, the Third Restatement and the Second Restatement are in accord. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 36 cmt. a (2010) ("[T]his Section preserves the limitation on liability that the substantial-factor requirement in the prior Restatements might have played in this situation."). Given Idaho's prior reliance on the Restatement, and in light of the decisions of courts in "numerous jurisdictions that employ the substantial-factor standard to limit [the] scope of liability in asbestos cases," we believe that Idaho courts would apply the substantial-factor test the same way we have. *McIndoe*, 817 F.3d at 1176 n.6. We therefore look to whether Stephens

has shown that exposure from Union Pacific sources was "sufficiently sustained (or frequent) and intense to constitute a proximate cause" of his mesothelioma. *Id*. (quoting *Menne*, 861 F.2d at 1461).

In an effort to establish causation, Stephens relied on the testimony of two experts: Dr. William Longo, a materials scientist, and Dr. Andrew Churg, a pathologist. Dr. Longo stated that "Stephens would have been exposed to significant levels of airborne asbestos fibers" from his father's work clothes, and Dr. Churg, in turn, opined that "Stephens' exposure to amosite asbestos from the Union Pacific roundhouse . . . . was a substantial contributing cause of his mesothelioma." We agree with the district court that those opinions are insufficient.

Expert testimony cannot create a genuine issue of material fact if it rests on assumptions that are not supported by evidence. Federal Rule of Evidence 702(b) permits the introduction of expert testimony only if "the testimony is based on sufficient facts or data." The expert's opinion must rest on "facts or data in the case that the expert has been made aware of or personally observed," not merely assumptions and speculation. Fed. R. Evid. 703; *see Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). A party's own speculation is insufficient to create a genuine issue of material fact, *see Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996), and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness.

Here, a key premise of both experts' analyses was that Stephens was frequently exposed to asbestos. For example, Dr. Longo explained in some detail how Stephens's father's exposure to asbestos would result in contamination at home,

which in turn would result in exposure to Stephens. Similarly, Dr. Churg opined that Stephens's exposure to his father's work clothes would have been sufficient on its own to cause his disease because that secondary exposure was "much more frequent" than Stephens's "occasional visits" to his father's workplace. But both Dr. Longo and Dr. Churg admitted that they had no knowledge of the degree to which Stephens's father was exposed to asbestos at work. Without knowing that, they had no basis to conclude that Stephens was exposed to asbestos at home with any regularity.

Even when reasonable inferences are drawn in Stephens's favor, the evidence in the record does not support the experts' assumption that Stephens's father was regularly exposed to asbestos. As we have explained, the evidence was, at best, barely sufficient to show any exposure at all. Stephens testified that on no more than four occasions he saw insulation being removed and replaced on steam engines at the Union Pacific roundhouse. While Stephens testified that his father's work clothes were dusty, that does not establish the frequency with which he was exposed to *asbestos* dust. The lack of detail in Stephens' testimony about his father's job is certainly understandable given that Stephens was between six and eight years old at the time—more than 60 years ago—but whatever the reason, Stephens did not recall his father's job title or duties, and he had no basis for saying whether his father would have been working in close proximity to steam engines. Stephens points to admissions by Union Pacific that asbestos-containing steam engines underwent regular maintenance, but those admissions establish only that such work occurred regularly systemwide; they do not say anything about how often it occurred at the Weiser roundhouse.

Stephens asserts that Union Pacific waived any objection to the admissibility of Dr. Churg's testimony, but that is incorrect. In its reply in support of its summary judgment motion, Union Pacific argued that "Dr. Churg did not base his opinion on sufficient facts or data," and it urged the district court to exclude his opinion. In so arguing, Union Pacific correctly identified the fundamental problem in Stephens's case: the lack of evidence about exactly what happened at the Weiser roundhouse in the 1940s and 1950s. That is not a subject on which Stephens's experts have any expertise—or any other basis for knowledge—so their testimony cannot fill the evidentiary gap.

Stephens notes that Idaho courts have cautioned against "second-guessing the facts upon which . . . experts choose to rely." *Earl v. Cryovac, A Div. of W.R. Grace Co.*, 772 P.2d 725, 728 (Idaho Ct. App. 1989). In *Earl*, the court considered the standards applicable to the admission of expert testimony under Idaho law. But the "standards for admitting expert evidence" in a diversity case are "matters that fall on the procedural side of the *Erie* divide" and are governed by federal law, not state law. *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010); *see also Wackman v. Rubsamen*, 602 F.3d 391, 400 n.2 (5th Cir. 2010). In any event, even if Dr. Longo and Dr. Churg were permitted to testify as experts, their assumption of facts that Stephens has failed to establish cannot, on its own, create a dispute of material fact. And the court in *Earl* recognized that an expert "must be accorded substantial deference in the selection of *data* upon which he chooses to base his opinion," a proposition entirely consistent with our holding that the expert's opinion must rest on actual data, not unfounded assumptions. *Earl*, 772 P.2d at 728 (emphasis added).

Stephens failed to establish that he was regularly exposed to asbestos attributable to Union Pacific. Without such evidence, Stephens cannot create a genuine issue of material fact on whether his secondary exposure was a substantial factor in causing his disease, and he cannot prevail on his negligence claims.

**AFFIRMED.**